**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0092n.06

No. 11-4268

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jan 25, 2013*
DEBORAH S. HUNT, Clerk

RENAISSANCE NORTH, LLC,    )
                          )
    Plaintiff-Appellant,    )
                          )
v.                        )    ON APPEAL FROM THE UNITED
                          )    STATES DISTRICT COURT FOR THE
FIFTH THIRD BANK,         )    SOUTHERN DISTRICT OF OHIO
                          )
    Defendant-Appellee.    )

Before: GUY, DAUGHTREY, and STRANCH, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Invoking the diversity jurisdiction of the federal courts, plaintiff Renaissance North, LLC, appeals the district court's grant of summary judgment to defendant Fifth Third Bank on the plaintiff's claims of breach of contract and promissory estoppel. For the reasons ably articulated by the district judge in her order of October 12, 2011, we affirm.

Renaissance North sought to develop and construct an independent-living and assisted-living facility in Springdale, Ohio, and approached Fifth Third Bank in an effort to secure financing for the project. On February 11, 2008, the bank issued a Summary Commitment Letter, agreeing to provide Renaissance North with "Up to Twenty Million Two Hundred Thousand Dollars ($20,200,000)," as long as the plaintiff satisfied numerous

"conditions precedent to closing." Included among those was a requirement that Renaissance North obtain a "Commitment of at least Two Million Five Hundred Thousand ($2,500,000) in Mezzanine Debt[1] under terms Acceptable to the Bank."

Unfortunately for the plaintiff, the timing of its construction project coincided with the nation's financial downturn that began in 2008. At the same time Renaissance North was attempting to secure outside financing for its envisioned facility, banks and other financial institutions were constricting their lending practices, despite the infusion of billions of dollars into the financial industry through programs administered by President George W. Bush and later by President Barack Obama. Thus, although Fifth Third Bank was willing to, and did in fact, extend the offer period during which the plaintiff could comply with the terms of the primary loan agreement, Renaissance North still failed to secure a firm commitment for the subordinate mezzanine financing from, first, GE Credit Union, then PRN Capital Trust, Gregel Realty Associates, and, finally, Argosy Real Estate.

Significantly, however, none of those potential subordinate lenders indicated that any actions on the part of Fifth Third Bank influenced or precipitated their decisions to withdraw from financing discussions with Renaissance North. For example, a representative of the plaintiff testified during his deposition that GE Credit Union ceased lending negotiations with Renaissance North for reasons unrelated to any action or inaction

---

[1] Jeff Gardner, a Fifth Third Bank vice-president who worked with Renaissance North to obtain the necessary project financing, described "mezzanine debt" to be "like a bank loan, but . . . subordinate to a senior debt loan." In other words, mezzanine debt is a second, subordinate loan obtained from a lender other than the bank that serves as the primary lender.

on the part of Fifth Third Bank. Likewise, PRN Capital Trust declined to provide mezzanine financing because "their underwriting and their investment profile . . . didn't match up for this particular project."

An officer with Gregel executed an affidavit that stated unequivocally:

The reason Gregel declined to provide secondary financing for the Renaissance North Project was unrelated to any action or inaction by Fifth Third. Gregel's reason for declining to provide secondary financing for the Renaissance North Project was not because of any requirements imposed by Fifth Third. Gregel's reason for declining to provide secondary financing for the Renaissance North Project was not because of any delays caused by Fifth Third.

Similarly, Andrew Winn, a principal with Argosy Real Estate, stated in a sworn affidavit:

After reviewing the Renaissance North project again . . ., we have decided to pass on the opportunity. As I'm sure you are aware, it has become extremely difficult to fund investments in this increasingly slowing and uncertain economy. . . . At this time, we are very hesitant to pursue ground up development activity, especially in the residential arena or in situations such as this where there is a strong dependence on people selling their houses to live in such a facility as Renaissance North.

Justifiably frustrated with its inability to meet one of the conditions precedent to the obligation of Fifth Third Bank to release over 20 million dollars in financing to the plaintiffs, Renaissance North ultimately filed suit in federal district court against Fifth Third Bank, alleging that the bank breached its agreement with the plaintiff or, in the alternative, was estopped from restricting the release of the funds because of Renaissance North's detrimental reliance upon the bank's alleged promise to provide the requested financing.

As explained by the district court in greater detail, however, Fifth Third Bank cannot be considered to have breached its contract with the plaintiff because one of the explicit, written conditions precedent to release of the loaned funds – that the plaintiff obtain a firm commitment of $2,500,000 in mezzanine financing – was never fulfilled. Additionally, because the parties entered into an enforceable written contract for provision of the funds "and merely dispute its terms, scope, or effect," Ohio law precludes the plaintiff's reliance upon the equitable principle of promissory estoppel. *See, e.g.*, *O'Neill v. Kemper Ins. Cos.*, 497 F.3d 578, 583 (6th Cir. 2007) (internal quotations omitted).

The district court has meticulously set forth the relevant facts and law in this case and has properly applied the law to those facts. The issuance of another full written opinion by this court would, therefore, be duplicative and would serve no useful precedential purpose. We thus AFFIRM the judgment of the district court upon the reasoning set forth in its order filed on October 12, 2011.